**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>JOHN L. KNIGHT,<br><br>                Defendant. | Criminal No.: 15-004 (JLL)<br><br>**OPINION** |

**LINARES**, District Judge.

      This matter comes before the Court by way of Defendant John L. Knight's objections to the U.S. Probation Office ("Probation")'s calculation of his base offense level as 24 under the U.S. Sentencing Guidelines (the "Guidelines" or "U.S.S.G."). Specifically, Defendant contends that his two prior convictions of aggravated assault and robbery do not constitute "crimes of violence" under U.S.S.G. § 4B1.2, and he submits that the correct base offense level is 14. Practically speaking, if both prior conviction are deemed "crimes of violence," Defendant's advisory guideline range is 70 to 87 months; if neither are "crimes of violence," his advisory guideline range is 24 to 30 months. The Court has considered the parties' submissions and heard oral argument on January 12, 2016. For the reasons set forth below, the Court concludes that Defendant's prior conviction for robbery qualifies as a crime of violence, but that his prior conviction for aggravated assault does not. Accordingly, the Court concludes that Defendant's total offense level is 21, and his guideline range is 57 to 71 months.

## BACKGROUND

Pertinent to the present issue, on January 21, 2015, Defendant appeared before this Court and pled guilty to a one-count indictment that charges he was a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1).  (ECF No. 15.)  On September 25, 2015, Probation filed a presentence investigation report ("PSR") which calculated Defendant's base offense level as 24 under the Guidelines.   On December 15, 2015, Defendant filed a sentencing memorandum objecting to the calculation of the base offense level. ("Def. Br.")  The Government responded on January 5, 2016 ("Gov't Br."), and Defendant replied on January 7, 2016 ("Def. Reply Br.").  On January 12, 2016, the Court heard argument on Defendant's objection to the PSR and reserved decision.  (ECF No. 16.)

## LEGAL STANDARD

After *United States v. Booker*, 543 U.S. 220 (2005), sentencing in the district courts proceeds in a three-step process: first, the courts "are to calculate a defendant's sentencing Guidelines range precisely as they would have pre-*Booker*"; second, the court must rule on any departure motions and "state on the record whether they were granting a departure and, if so, how such a departure affects the initial Guidelines calculation"; and third, the court must "exercise their discretion by considering the relevant 18 U.S.C. § 3553(a) factors in setting their sentences, regardless of whether it varies from the original calculation." *United States v. Fumo*, 655 F.3d 288, 329 (3d Cir. 2011).

The issue here centers on the first step: calculation of Defendant's Guidelines range. Because this portion of the PSR is in dispute, the Court must "rule on the dispute or determine that

a ruling is unnecessary either because the matter will not affect sentencing, or because the court will not consider the matter in sentencing." *United States v. Leahy*, 445 F.3d 634, 663 (3d Cir. 2006) (quoting Fed. R. Crim. P. 32(d)(i)(3)(B) (2003)). The Court will rule on the dispute.

## ANALYSIS

As detailed in the PSR, the guideline for 18 U.S.C. § 922(g)(1) offenses is found in U.S.S.G. § 2K2.1 of the Guidelines. That section provides for a base offense level of 24 "if the defendant committed any part of the instant offense subsequent to sustaining at least two felony convictions of either a crime of violence or a controlled substance offense[.]" Per Application Note 1 of § 2K2.1, the phrase "crime of violence" has the meaning given that term in § 4B1.2(a) and Application Note 1 of § 4B1.2. U.S.S.G. § 2K2.1, cmt. n.1.

U.S.S.G. § 4B1.2(a)(1) defines "crime of violence" in relevant part as any crime punishable by more than a year of imprisonment that "has as an element the use, attempted use, or threatened use of physical force against the person of another." *Id.* (*i.e.*, "the elements clause").[1] The phrase "physical force" as used in the Guidelines means "*violent* force—that is, force capable of causing physical pain or injury to another person" and which "connotes a substantial degree of force." *Johnson v. United States*, 559 U.S. 133, 140 (2010) (emphasis in original).

---

[1] The parties agree that U.S.S.G. § 4B1.2(a)(2) is inapplicable. Under that section, a prior conviction may also be a "crime of violence" if it "is burglary of a dwelling, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another, or otherwise involves conduct that presents a serious potential risk of physical injury to another." U.S.S.G. § 4B1.2(a)(2). The prior convictions here clearly do not constitute "burglary of a dwelling, arson, or extortion," nor do they "involve[] use of explosives." Furthermore, the parties agree that the "residual clause"—"or otherwise involves conduct that presents a serious potential risk of physical injury to another"—is invalid in light of *Johnson v. United States*, 135 S. Ct. 2551 (2015), where the Supreme Court held an identical clause in the Armed Career Criminal Act ("ACCA") void for vagueness. As noted in footnote 2, *infra*, even though *Johnson* interpreted the ACCA as opposed to the U.S.S.G., its holding nevertheless applies to the Guidelines.

Additionally, Application Note 1 of U.S.S.G. § 4B1.2 provides in relevant part that "crime of violence" also encompasses certain enumerated offenses, including "murder, manslaughter, kidnapping, aggravated assault, forcible sex offenses, robbery, arson, extortion, extortionate extension of credit, and burglary of a dwelling." U.S.S.G. § 4B1.2, cmt. n.1 (*i.e.*, the "enumerated offenses"). However, there is no record of whether the enumerated offenses listed in Application Note 1 of U.S.S.G. § 4B1.2 are interpretations of the force clause or the residual clause.

Here, the PSR calculated Defendant's base offense level of 24 based on his prior New Jersey felony convictions for two predicate crimes of violence: (1) his 1997 conviction for first-degree robbery; and (2) his 2009 conviction for aggravated assault on a police officer. (PSR ¶¶ 19, 31, 33.) Defendant argues that neither of these prior convictions constitute a "crime of violence." The Government disagrees.

The Government bears the burden. *See United States v. Horton*, 461 F. App'x 179, 182 (3d Cir. 2012) ("The government bears the burden at sentencing of proving by a preponderance of the evidence that the defendant was convicted of a prior felony.") (citation omitted). The Court will discuss each prior conviction in turn, but first addresses the approach it must follow.

## A. Categorical Approach / Modified Categorical Approach

In the Third Circuit, sentencing courts "must apply a categorical approach" in determining whether a prior conviction constitutes a "crime of violence." *See United States v. Brown*, 765 F.3d 185, 188-89 (3d Cir. 2014) (citation omitted). Under this approach sentencing courts "'compare the elements of the statute forming the basis of the defendant's conviction with the elements of the "generic" crime—*i.e.*, the offense as commonly understood. The prior conviction qualifies as an ACCA predicate only if the statute's elements are the same as, or narrower than, those of the

4

generic offense." *Id.* at 189 (quoting *Descamps v. United States*, 133 S. Ct. 2276, 2281 (2013)).[2]
The focus is on the elements of the statute; the underlying facts of conviction are irrelevant. *Id.*
(quoting *Descamps*, 133 S. Ct. at 2283). "In the ordinary case of identifying whether a prior
conviction fits the § 4B1.2(a)(1) definition, a court simply asks 'whether the state crime has the
use or threat of physical force [against the person of another] as an element of the offense.'" *Id.*
(quoting *United States v. Remoi*, 404 F.3d 789, 794 (3d Cir. 2005)). If the statute of conviction
"sweeps more broadly" than the federal definition, a conviction under it is not a predicate offense,
regardless of whether "the defendant actually committed the offense in a way that involved the use
(or threatened use) of physical force against another." *Id.* (citing *Descamps*, 133 S. Ct. at 2283).

However, there is a "narrow range of cases" where "a court can look beyond the fact of
conviction and examine certain record evidence from the conviction to determine whether the prior
offense is a crime of violence." *Id.* (citing *Taylor v. United States*, 495 U.S. 575, 602 (1990)).
When a statute is "divisible"—*i.e.*, it "comprises multiple, alternative versions of the crime"—a
sentencing court "may look to a limited class of extra-statutory documents to determine which
version of the offense was the basis of conviction." *Brown*, 765 F.3d at 189 (citing *Descamps*,
133 S. Ct. at 2284). This is known as the modified categorical approach. *Id.* (citing *Descamps*
133 S. Ct. at 2283). Significantly, "[t]he modified categorical approach still 'retains the categorical
approach's central feature: a focus on the elements, rather than the facts, of a crime.'" *Id.* (quoting
*Descamps*, 133 S. Ct. at 2285). Although the sentencing court is permitted to consult "the charging
document, written plea agreement, transcript of plea colloquy, and any explicit factual finding by

---

[2] Decisions interpreting sentencing enhancements under the ACCA (in particular the meaning of "violent felony")
apply with equal force to career offender enhancements under the Guidelines (*i.e.*, U.S.S.G. § 4B1.2(a)) because of
the substantial similarity of the provisions. *See Brown*, 765 F.3d at 189 n.2 (citations omitted).

5

the trial judge to which the defendant assented," *Shepard v. United States*, 544 U.S. 13, 16 (2005), these documents may be used only "to determine which of a statute's alternative *elements* formed the basis of the defendant's prior conviction." *Brown*, 765 F.3d at 190 (quoting *Descamps*, 133 S. Ct. at 2284) (emphasis in original).

In *Brown*, the Third Circuit provided an example of when and how the modified categorical approach may be used:

> The modified categorical approach is perhaps best explained by a generic example. Imagine a defendant previously convicted for violating Statute X. In considering whether that prior conviction is a predicate offense, a sentencing court should first determine whether a violation of X is, no matter the circumstances of the particular crime, always a crime of violence. If so, it is a predicate offense under the regular categorical approach and there is no need to analyze the statute any further. If, on the other hand, the court determines that X is overbroad (*i.e.*, it covers some conduct that is a crime of violence and some that is not), the court should then inquire whether X is divisible. If the court determines that X is generally divisible into, say, three versions of the offense—subsections a, b and c—it should next determine whether any of these subsections (for example, X(a)) is, by its particular elements, always a federally defined crime of violence. If so, then the court may apply the modified categorical approach to determine whether the defendant was convicted under X(a). That is the typical way in which the modified categorical approach operates. . . .

> [H]ow far [does] the modified categorical approach logically extend[] if a statute is divisible into subparts but no version of the offense (a, b or c) is in all circumstances a crime of violence[?] May a sentencing court nonetheless look to extra-statutory documents to see whether the particular offense a defendant committed was a crime of violence? Or must the Court halt its analysis and find that the conviction is not a predicate offense? *Descamps*, which took a hard line on how the modified categorical approach operates, requires the latter. If a statute is generally divisible into multiple versions, but each version is overbroad (covers at least some conduct that is not a crime of violence) and indivisible (cannot be further divided into sub-versions *based on the elements*), the extra-statutory documents are irrelevant and a sentencing court's analysis

6

> has reached a dead-end: the prior conviction is not a predicate offense. *See Descamps*, 133 S. Ct. at 2283.

*Brown*, 765 F.3d at 191. In other words, even though there may be an "unjust cost" for looking away from the facts of the case, "sentencing judges, at least for subsections not divisible solely by looking at their written elements, may look no further [than the elements] no matter how well they understand the actual facts contained in extra-statutory documents." *Id.* at 196 n.5.

## B. Aggravated Assault[3]

It is undisputed that in 2009, Defendant was convicted of third-degree aggravated assault under N.J.S.A. § 2C:12-1(b)(5)(a), which states that a person is guilty of aggravated assault if he commits "a simple assault as defined in paragraph (1), (2) or (3) of subsection a. of this section" upon any "law enforcement officer acting in the performance of his duties while in uniform[.]" *Id.* Under N.J.S.A. §2C:12-1(a), a person is guilty of simple assault if he:

> (1) Attempts to cause or purposely, knowingly or recklessly causes bodily injury to another; or
>
> (2) Negligently causes bodily injury to another with a deadly weapon; or
>
> (3) Attempts by physical menace to put another in fear of imminent serious bodily injury.

*Id.* The parties agree that Defendant pled guilty to subsection (a)(1). (Def. Br. at 10-11; Gov't Br. at 5-6.) As noted, consultation of extra-statutory documents under the modified categorical approach is permitted only if "at least one of the versions by its elements is a crime of violence *in all instances*." *Brown*, 765 F.3d at 192 (citing *Descamps*, 133 S. Ct. at 2285) (emphasis added).

---

[3] Even though "aggravated assault" is specifically enumerated in Application Note 1 of U.S.S.G. § 4B1.2, the Government waives any argument in this regard. (*See* Gov't Br. at 5 n.3). In other words, the Government contends that the aggravated assault here is a prior conviction of a "crime of violence" because it "has as an element the use, attempted use, or threatened use of physical force against the person of another." U.S.S.G. § 4B1.2(a)(1).

Because the parties agree on the relevant subsection, the Court determines if subsection (a)(1) constitutes a crime of violence in all instances.

Defendant argues that N.J.S.A. §2C:12-1(a)(1) is broader than the elements of the federal "generic" crime of aggravated assault as it is commonly understood, such that conviction under N.J.S.A. §2C:12-1(a)(1) cannot be considered a "crime of violence." In support, Defendant relies heavily on *United States v. Martinez-Flores*, 720 F.3d 293 (5th Cir. 2013), in which the Fifth Circuit held that a prior conviction for aggravated assault under N.J.S.A. § 2C:12-1(b)(7) could not be considered a "crime of violence" for purposes of the Guidelines because the New Jersey statute (which references "*significant* bodily injury") is broader than the federal generic crime (which envisions "*serious* bodily injury"). Defendant argues that the same logic applies here because the statute at issue in this case, subsection (a)(1), is even broader than subsection (b)(7), in that it requires mere "bodily injury."

In opposition, the Government argues that Defendant's prior conviction for third-degree aggravated assault qualifies as a "crime of violence." The Government argues that subsection (a)(1)'s element of "causes bodily injury" places it within the confines of the Guidelines' because it has the use or threat of physical force against another person as element of the offense. In short, the Government equates the definition of "bodily injury" (which includes "physical pain") to the definition of "physical force" (which is "force capable of causing physical pain"). The Government further contends that Defendant's reliance on *Martinez-Flores* is misplaced, especially because the Fifth Circuit explicitly noted that its conclusion conflicted with *United States v. Horton*, 461 F. App'x 179 (3d Cir. 2012), where the Third Circuit held in a non-precedential opinion that a prior conviction under N.J.S.A. § 2C:12-1(b)(7) did in fact qualify as a

8

"crime of violence." *Horton* concluded that the New Jersey statute's requirement of the use of force "sufficient to cause physical pain or injury" constitutes having the use of physical force as an element for Guidelines purposes. *Id.* at 184.

The Court agrees with Defendant. Conviction for aggravated assault under N.J.S.A. § 2C:12-1(b)(5)(a), when premised on an underlying violation of N.J.S.A. § 2C:12-1(a)(1), cannot be considered a "crime of violence" for predicate offense purposes because it sweeps more broadly than the federal generic definition of aggravated assault as it is commonly understood. In other words, because the state statute covers at least some conduct that is not a crime of violence, a conviction under it does not qualify as a predicate offense. *See Taylor*, 495 U.S. at 591 (holding that state statute must correspond "in substance" to the federal generic meaning in order to be deemed predicate offense for sentencing purposes).

To be clear, even though the inquiry is "whether the state crime has the use or threat of physical force [against another person as element] of the offense," *Brown,* 765 F.3d at 185 (quoting *Remoi,* 404 F.3d at 794), at the same time it cannot be forgotten that "[i]f the state statute 'sweeps more broadly' than the federal definition, a conviction under it is not a career offender predicate even if the defendant actually committed the offense in a way that involved the use (or threatened use) of force against another." *Id.* (citing *Descamps*, 133 S. Ct. at 2283). Thus, Third Circuit case law suggests that even if a statue statute is deemed to have physical force against another as an element, the sentencing court must also ensure that the state statute is not overbroad before a conviction under it can be deemed a predicate offense.[4]

---

[4] In *Brown*, the Third Circuit followed this method precisely in concluding that Pennsylvania's terroristic threats statute is categorically not a predicate offense under the Guidelines. The statute at issue in *Brown* prohibited communicating a threat to "commit any crime of violence with intent to terrorize another." *Brown*, 765 F.3d at 191 (citing 18 Pa. Cons. Stat § 2706). The statute thus clearly "has as an element the use, attempted use, or threatened use

9

Indeed, although *Horton* appears to support the Government's position, the Court is wary of that opinion's failure to determine if the state statute was overbroad. In light of more recent case law, this failure appears to have been in error. In *Horton*, the court utilized the modified categorical approach to conclude that the defendant was convicted under N.J.S.A. § 2C:12-1(b)(7), and then concluded that because the statute has physical force against another as an element, it is categorically a "crime of violence." 461 F. App'x at 183-84. There was no analysis to determine if the New Jersey statute swept more broadly. The *Horton* court's failure to engage in this comparative analysis undermines the reliability of its holding. *See Descamps*, 133 S. Ct. at 2281 (the modified categorical approach permits consultation of certain documents so that the sentencing court "can then do what the categorical approach demands: compare the elements of the crime of conviction (including the alternative element used in the case) with the elements of the generic crime.").

When the elements of N.J.S.A. § 2C:12-1(a)(1) are compared with the elements of the generic crime of aggravated assault, the Court cannot help but conclude that the New Jersey statute "sweeps more broadly" than the federal definition, which necessitates a finding that N.J.S.A. § 2C:12-1(a)(1) is not a "crime of violence" for purposes of the Guidelines. *See Brown*, 765 F.3d at 189 (quoting *Descamps*, 133 S. Ct. at 2283). This is precisely the analysis conducted by the Fifth Circuit in *Martinez-Flores*, and thus the Court finds that decision persuasive.

To be sure, the New Jersey statute at issue states that a person is guilty of simple assault if he "[a]ttempts to cause or purposely, knowingly or recklessly causes bodily injury to another,"

---

of physical force against the person of another," as required by U.S.S.G. § 4B1.2(a)(1), but the Third Circuit continued its analysis to determine if it was overbroad, and ultimately concluded that it was. *Brown*, 765 F.3d at 192-93. *Brown* thus reiterates the necessity of engaging in a so-called "overbreadth analysis," even if the statute at issue has the use or threat of physical force against another person as element of the offense.

N.J.S.A. § 2C:12-1(a)(1), and that is considered aggravated assault if it is committed upon any "law enforcement officer acting in the performance of his duties while in uniform[.]"  N.J.S.A. § 2C:12-1(b)(5)(a).  In contrast, the Model Penal Code ("MPC")[5] provides that a person commits aggravated assault when he "(a) attempts to cause serious bodily injury to another, or causes such injury purposely, knowingly, or recklessly under circumstances manifesting extreme indifference to the value of human life; or (b) attempts to cause or purposely or knowingly causes bodily injury to another with a deadly weapon."  Model Penal Code § 211.1(2); *see also* 6 Am. Jur. 2d Assault and Battery § 32 ("Aggravated assault usually consists of intentionally or recklessly causing great or serious bodily harm to another.").

The key distinction is the New Jersey statute's requirement of "bodily injury" versus the generic definition's requirement of "serious bodily injury."  The New Jersey statute defines "bodily injury" as "physical pain, illness or any impairment of physical condition,"  N.J.S.A. § 2C:11-1(a), whereas the MPC defines "serious bodily injury" as "bodily injury which creates a substantial risk of death or which causes serious, permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ."  Model Penal Code § 210.0(3)).  Clearly, "bodily injury" as defined in the New Jersey statute does not rise to the level of "serious bodily injury" as required under the federal generic definition of aggravated assault.[6]  Stated differently, causing or attempting to cause bodily injury does not fall within the common sense meaning of aggravated assault.  The New Jersey statute which forms the basis of Defendant's prior

---

[5] "The MPC is an ideal starting point" for distilling a generic definition of a predicate offense.  *United States v. Marrero*, 743 F.3d 389, 399 (3d Cir. 2014) *cert. denied*, 135 S. Ct. 950 (2015).

[6] Indeed, mere "physical discomfort, or a sensation caused by a kick" is sufficient bodily injury for purposes of proving assault under the New Jersey statute.  *See State v. Stull*, 403 N.J. Super. 501, 505 (App. Div. 2008) ("Not much is required to show bodily injury.").  This would not be enough to qualify as "serious bodily injury" under the federal generic definition.

conviction sweeps more broadly than the offense as commonly understood, and so Defendant's prior conviction for aggravated assault under N.J.S.A. § 2C:12-1(b)(5)(a) cannot serve as a predicate for purposes of the Guidelines. *See Brown*, 765 F.3d at 189 (quoting *Descamps*, 133 S. Ct. at 2283).

### C. Robbery

It is undisputed that in 1997, Defendant pled guilty to two counts of first-degree robbery under N.J.S.A. § 2C:15-1, which provides as follows:

> a. Robbery defined. A person is guilty of robbery if, in the course of committing a theft, he:
>
>> (1) Inflicts bodily injury or uses force upon another; or
>> (2) Threatens another with or purposely puts him in fear of immediate bodily injury; or
>> (3) Commits or threatens immediately to commit any crime of the first or second degree.
>
> An act shall be deemed to be included in the phrase "in the course of committing a theft" if it occurs in an attempt to commit theft or in immediate flight after the attempt or commission.
>
> b. Grading. Robbery is a crime of the second degree, except that it is a crime of the first degree if in the course of committing the theft the actor attempts to kill anyone, or purposely inflicts or attempts to inflict serious bodily injury, or is armed with, or uses or threatens the immediate use of a deadly weapon.

The parties agree that Knight pled guilty to first-degree robbery pursuant to subsection (a)(1). (Gov't Br. at 10; Def. Reply Br. at 3.)

Defendant argues that N.J.S.A. § 2C:15-1(a)(1) cannot serve as a predicate offense because it is overbroad. Defendant contends that the meaning of "force" in the New Jersey statute is broader than the "violent" force that is required to constitute "physical force" under the Guidelines. Specifically, Defendant argues that because the New Jersey robbery statute was amended to

12

include "use of force" in order to encompass "blindside muggings" that did not necessarily result in bodily injury, *see State v. Sein*, 232 N.J. Super. 300, 303 (App. Div. 1989), it is broader than the federal definition of "physical force," which requires "force capable of causing physical pain or injury to another person." *Johnson*, 559 U.S. at 140. Defendant relies on *United States v. Hollins*, in which the court held that, in light of *Johnson*, a statute fails to qualify as a "crime of violence" under the Guidelines if it requires only "force however slight." 514 F. App'x 264, 267 (3d Cir. 2013).

In opposition, the Government argues that N.J.S.A. § 2C:15-1(a)(1) qualifies as a crime of violence for two reasons. First, the Government argues that N.J.S.A. § 2C:15-1(a)(1) "has as an element the use, attempted use, or threatened use of physical force against the person of another" because the statute has as an element that the individual "[i]nflict[] bodily injury or use[] force upon another" on its face. Second, the Government notes that "robbery" is a specifically enumerated offense in Application Note 1 of U.S.S.G. § 4B1.2.

The Court agrees with the Government under either approach because the statute under which Defendant was convicted is a "crime of violence." In other words, the Court does not find that conviction for first-degree robbery under N.J.S.A. § 2C:15-1(a)(1) is overbroad.

As *Brown* instructs, the Court must "first determine whether a violation of [N.J.S.A. § 2C:15-1] is, no matter the circumstances of the particular crime, always a crime of violence. If so, it is a predicate offense under the regular categorical approach and there is no need to analyze the statute any further." 765 F.3d at 191. Clearly, violation of N.J.S.A. § 2C:15-1 is not always a crime of violence given subsection (a)(3), which states that a person is guilty of robbery if, in the course of committing a theft, he "[c]ommits or threatens immediately to commit *any crime* of the

13

first or second degree." N.J.S.A. § 2C:15-1(a)(3) (emphasis added). For example, N.J.S.A. 2C:20-16(a) states that it is a crime of the second degree to operate a chop shop, which is not a crime of violence.[7] Thus, as a whole, N.J.S.A. § 2C:15-1 is overbroad. As such, the Court looks to see if N.J.S.A. § 2C:15-1 is divisible. *Brown*, 765 F.3d at 191.

Because the statute is divisible into subsections, the Court must "determine whether any of these subsections (for example, X(a)) is, by its particular elements, always a federally defined crime of violence. If so, then the court may apply the modified categorical approach to determine whether the defendant was convicted under X(a)." *Id.* The Court concludes that a conviction for robbery in the first degree under N.J.S.A. § 2C:15-1 is always a crime of violence and that it is not overbroad.

First, under N.J.S.A. § 2C:15-1(b), robbery is a crime of the first degree "if in the course of committing the theft the actor attempts to kill anyone, or purposely inflicts or attempts to inflict serious bodily injury, or is armed with, or uses or threatens the immediate use of a deadly weapon." *Id.* The Court is satisfied that this "has as an element the use, attempted use, or threatened use of physical force against the person of another." U.S.S.G. § 4B1.2(a)(1); *see also Johnson*, 550 U.S. at 140 (defining "physical force" as "*violent* force—that is, force capable of causing physical pain or injury to another person" and which "connotes a substantial degree of force"). Regardless of which subsection an individual is convicted under (*i.e.*, subsection (a)(1), (a)(2), or (a)(3)), if a conviction under N.J.S.A. § 2C:15-1 is in the first degree pursuant to subsection b, it will always be a crime of violence.

---

[7] "A person who knowingly maintains or operates any premises, place or facility used for the remodeling, repainting, or separating of automobile parts for resale of any stolen automobile is guilty of a crime of the second degree." N.J.S.A. 2C:20-16(a). Although such a charging scenario is unlikely, it technically meets the plain language of N.J.S.A. § 2C:15-1(a)(3).

Furthermore, when a conviction under N.J.S.A. § 2C:15-1 is in the first degree, the statute is not overbroad.  The MPC defines robbery as follows:

> (1) Robbery Defined. A person is guilty of robbery if, in the course
> of committing a theft, he:
>     a.  inflicts serious bodily injury upon another; or
>     b.  threatens another with or purposely puts him in fear of
>         immediate serious bodily injury; or
>     c.  commits or threatens immediately to commit any felony
>         of the first or second degree.
>
> An act shall be deemed "in the course of committing a theft" if it
> occurs in an attempt to commit theft or in flight after the attempt or
> commission.
>
> (2) Grading. Robbery is a felony of the second degree, except that it
> is a felony of the first degree if in the course of committing the theft
> the actor attempts to kill anyone, or purposely inflicts or attempts to
> inflict serious bodily injury.

MPC § 222.1.  The MPC's first-degree requirement of attempting to kill or purposely inflicting serious bodily injury corresponds with New Jersey's requirements.  Again, under N.J.S.A. § 2C:15-1, robbery is a crime of the first degree "if in the course of committing the theft the actor attempts to kill anyone, or purposely inflicts or attempts to inflict serious bodily injury, or is armed with, or uses or threatens the immediate use of a deadly weapon." *Id.*  The addition in the New Jersey statute of a deadly weapon is not enough for the Court to conclude that the statute is overbroad.  First, a "deadly weapon is one which, from the manner used, is calculated or likely to produce death or serious bodily injury." *Gov't of Virgin Islands v. Robinson*, 29 F.3d 878, 886 (3d Cir. 1994) (citation omitted).  Second, the Guidelines specifically include "threatened use of physical force" within the definition of "crime of violence." U.S.S.G. § 4B1.2(a)(1).  Thus, the additional element of "deadly weapon" in the New Jersey statute does not make the statute overbroad, because it appears to qualify as a crime of violence in and of itself.  Accordingly, the

15

Court finds that first-degree robbery under the New Jersey statute sufficiently corresponds to first-degree robbery as commonly understood and that it qualifies as a predicate offense for sentencing purposes. *See also Taylor*, 495 U.S. at 591 (holding that state statute must correspond "in substance" to the federal generic meaning in order to be deemed predicate offense for sentencing purposes).

Having determined that N.J.S.A. § 2C:15-1 is divisible and that a conviction under it in the first degree is always a crime of violence, the Court may now look to extra-statutory documents to determine if Defendant was convicted for first degree robbery under N.J.S.A. § 2C:15-1. *Brown*, 765 F.3d at 191. The parties agree that review of the permitted documents[8] reveals that Defendant was in fact convicted of robbery in the first-degree under N.J.S.A. § 2C:15-1(b). (Def. Br. at 18; Gov't Br. at 8). Accordingly, the Court concludes that Defendant's robbery conviction qualifies as a crime of violence for Guidelines purposes.[9]

### D.  Calculation of Defendant's Guideline Range

Because only one of Defendant's prior convictions qualifies as a "crime of violence," his base offense level is 22. *See* U.S.S.G. § 2K2.1(a)(3).[10] As detailed in the PSR, because the firearm

---

[8] The sentencing court is permitted to consult "the charging document, written plea agreement, transcript of plea colloquy, and any explicit factual finding by the trial judge to which the defendant assented." *Shepard*, 544 U.S. at 16 (2005).

[9] Although the Court declines to formally rule on the issue, the Court notes that N.J.S.A. § 2C:15-1 would likely also be considered a "crime of violence" because "robbery" is a specifically enumerated offense in Application Note 1 of U.S.S.G. § 4B1.2. "[C]ommentary in the Guidelines Manual that interprets or explains a guideline is authoritative unless it violates the Constitution or a federal statute, or is inconsistent with, or a plainly erroneous reading of, that guideline." *Stinson v. United States*, 508 U.S. 36, 38 (1993). Although there is no record of whether the enumerated offenses listed in Application Note 1 of U.S.S.G. § 4B1.2 are interpretations of the force clause or the residual clause, the recent decisions in *Beckles v. United States*, 616 F. App'x 415 (11th Cir. 2015) and *Denson v. United States*, 804 F.3d 1339 (2015) suggest the former. Thus, at the very least, *Johnson* does not foreclose this argument, but the Court nevertheless declines to substantively address it.

[10] Under this provision, a defendant has a base offense level of 22 "if (A) the offense involved a (i) semiautomatic firearm that is capable of accepting a large capacity magazine; or (ii) firearm that is described in 26 U.S.C. § 5845(a); and (B) the defendant committed any part of the instant offense subsequent to sustaining one felony conviction of either a crime of violence or a controlled substance offense[.]"

16

at issue in the present charge was stolen, the offense level is increased by two levels to 22. *See* U.S.S.G. § 2K2.1(b)(4)(A). And because Defendant has accepted responsibility for the offense and assisted authorities in the prosecution of the offense by entering a plea of guilty, Probation subtracted three levels from the offense level. *See* PSR ¶¶ 26, 27; *see also* U.S.S.G. §§ 3E1.1(a), (b). Accordingly, Defendant's total offense level is 21.

According to the PSR, Defendant's total criminal history score is 9. (PSR ¶ 35.) As set forth in the Guidelines Chapter 5, Part A, a criminal history score of nine establish a criminal history category of IV.

Taken together, a total offense level of 21 with a criminal history category of IV results in a guideline imprisonment range of 57 to 71 months. Defendant agrees with this calculation. (Def. Br. at 2 n.1.)

## CONCLUSION

For the reasons above, the Court concludes that Defendant's prior conviction for robbery qualifies as a crime of violence, but that his prior conviction for aggravated assault does not. Defendant's total offense level is 21, and his guideline range is 57 to 71 months. Sentencing is scheduled for March 1, 2016 at 10:00 AM in MLK 5D. An appropriate Order accompanies this Opinion.

DATED: January 19, 2016

JOSE L. LINARES
UNITED STATES DISTRICT JUDGE

17